[Civil No. 3794. Filed March 15, 1937.]

[65 Pac. (2d) 1164.]

JACK ALTMAN, Petitioner, v. DON PACE, Defendant Employer, THE INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, Respondents.

Mr. Chas. Rogers, for Petitioner.

Mr. Don C. Babbitt and Mr. Howard A. Twitty, for Respondent Industrial Commission.

LOCKWOOD, J.—This case comes before us on *certiorari* from an award of the Industrial Commission, hereinafter called the commission, made to Jack Altman, hereinafter called petitioner. The record shows the following situation:

On November 8, 1935, petitioner was injured by an accident arising out of and in the due course of his employment. He applied to the commission, in the usual manner, for compensation, and on March 21, 1936, it made its findings and award, allowing him compensation for temporary disability from November 9, 1935, to March 12, 1936, and finding that any disability existing after the last-named date was not proximately the result of any injury arising out of and in the due course of his employment. Application was duly made for a rehearing, which was granted, and on May 8, 1936, a rehearing was held in Safford, Arizona, before the referee of the commission. On June 24th the commission affirmed its former award, and the petitioner brought the matter before this court for review. The

brief submitted with the petition for *certiorari,* as required by our rule, does not set up either assignments of error or propositions of law, nor are the reasons shown in the petition itself set forth in the usual manner. However, we gather therefrom that petitioner considers the commission erred in three points: (a) That the stenographic report of the proceedings at the rehearing was never transcribed nor considered by any of the commission in its entirety; (b) that only one of the commissioners considered any part or portion of the evidence produced at the rehearing; and (c) that the evidence shows petitioner was still suffering from the result of injuries received by him in the accident above referred to, both at the time of the original award and at the date of the rehearing. We consider these objections in their order.

So far as the objections in regard to the transcription of the stenographer's notes, and the consideration of the evidence by one commissioner only, this court has passed on both questions in the case of *King* v. *Alabam's Freight Co.,* 38 Ariz. 205, 298 Pac. 634, 635. We said as follows:

"It appears from the copy of the proceedings certified to this court by the commission that the evidence on rehearing was heard by a referee on May 28, 1930, none of the commissioners themselves being present, and that it had not been transcribed by July 3rd when the award was made. This being true petitioners contend that the commission made the findings and the award without hearing the evidence or knowing what it was and, therefore, that its action was unlawful, arbitrary and in excess of its powers. This charge, if true, would demand that the decision be set aside because the law contemplates that the orders and awards of the commission shall be made after a full consideration by it of all the facts of the case and shall be its deliberate act. In *Johnson* v. *T. B. Stewart Construction Co.,* [37 Ariz. 250] 293 Pac. 20, 22, the following language is used:

" 'We think it is implicit in the Workmen's Compensation Act that all orders and awards must be the deliberate act of the commission. It is the duty of the commission as a body to consider and deliberate upon the evidence and all of the evidence, whether the issue be one of compensation or one for the protection of the life, health, safety, and welfare of the employees, and bring to bear their best and most conscientious judgment with a view of reaching a just, fair, and equitable conclusion. The commission cannot delegate this imperative duty to any one.'

"However, the fact that the testimony had not been transcribed when the award was made does not indicate that the commission did not act on it in reaching its decision. The notes of the stenographer were in its possession and were easily read by her, and in the absence of an affirmative showing that it did not have her do this the presumption that it performed its full duty in this respect would necessarily prevail, and especially is this true in view of the fact that a transcript of the evidence is a part of the proceedings which the commission certified in response to the writ of *certiorari* as constituting the record upon which it acted in making its findings and award. The provision that 'all testimony shall be taken down by a stenographer,' section 1401, Revised Code of 1928, does not imply that it shall be transcribed in every one of the thousands of cases heard by the commission each year, because to do so would be expensive and serve no useful purpose in a large percentage of the hearings which are mere matters of form and wholly uncontested, but under sections 1404 and 1452, Revised Code of 1928, it is necessary in those cases in which a party commences in the superior court an action 'to set aside, vacate or amend' an order of the commission, or applies to this court 'for a writ of *certiorari* to review the lawfulness of the award.' There is no statutory requirement that it be done prior to service upon the commission of the proper papers in one of these instances and perhaps no occasion for it up to that time unless the commission feels that a study of the written testimony, not the mere reading of it by the reporter in the hearing of the members thereof, is necessary to advise it fully of the facts.''

 It was therefore not necessary, in order to sustain the award, that the commissioners before making it had the testimony upon which the award either at the original hearing or the rehearing was made transcribed, so that they might read a typewritten copy of the notes. It was, however, necessary that they should consider all of the evidence upon which the award was based and, therefore, that at least either a majority of the commission be present at the hearing of the testimony; that they have it transcribed and read it; or that they have it read to them by the stenographer who took the original notes. The presumption is that public officers do their duty, and, unless there is some showing in the record that these requisites were not complied with, we must assume that the rule laid down by us in *King* v. *Alabam's Freight Co., supra,* was followed. There is nothing called to our attention which would cause us to believe that the evidence was not fully considered by a majority of the commission, including both of the members who signed the award upon the rehearing. We are therefore compelled to assume that the law was complied with in regard to the two questions of procedure raised by the petition.

 The next question is the sufficiency of the evidence to sustain the award. It appears from the record that petitioner was examined by four different physicians who testified in regard to his injuries, either orally at the rehearing or by their written reports made to the commission. We have previously held that these written reports are proper evidence for the consideration of the commission in cases of this kind provided that, if the petitioner so desires, he may require that the physician who made the report shall be subpoenaed to appear for cross-examination thereon. It does not appear that the petitioner requested at any time that Dr. Ralph Palmer, the physician whose evidence ap-

pears only by his written report in the records of the commission, be subpoenaed at any time for cross-examination, so the commission might properly consider the report of Dr. Palmer and give such credence to it as they thought proper. Taking the reports of these four doctors, we find the following situation: All of them agreed that petitioner was originally injured by a fall on some rocks, which fall produced severe contusions of the chest, extending probably to the fracture of two ribs and considerable muscular bruises on the legs. During the month of March, the petitioner was again examined. All of the physicians agreed that the fractured ribs were completely united. One said he thought no further disability existed by reason of the fracture, two were doubtful, while the fourth was of the opinion there was still some disability from that cause and also some spinal trouble. In addition, all of the physicians agreed that at the time compensation was stopped petitioner was suffering from pyloric ulcers. Dr. Palmer stated that the ulcers were in no way attributable to the accident; Dr. Butler expressed no opinion on this point; Dr. Langdon thought the injury might have made the ulcers worse; while Dr. Williams was quite positive that the ulcers were the result of the injury, or at least were aggravated thereby.

It will be seen from this *résumé* of the evidence that about the only thing the doctors agreed upon, so far as the petitioner's condition after the award is concerned, was that he was suffering from pyloric ulcers, but they disagreed upon whether there was any continued disability from the original accident, either from the injury to the bony structure or from the ulcers. Under these circumstances, we cannot say, as a matter of law, that the commission was not justified in taking the view of Dr. Palmer upon the subject. *Ison* v. *Western Vegetable Distributors,* 48 Ariz. 104, 59 Pac.

(2d) 649. This disposes of all the questions raised by petitioner in his writ.

It was argued with much earnestness at the oral hearing that the petitioner was, indeed, totally disabled and had no resources from which to support himself and family if compensation were denied him. This, no doubt, is true, and it is indeed regrettable that such is the fact, but, in reviewing awards of compensation made by the Industrial Commission, this court is bound by the rules of law and may not render a decision contrary thereto because of the hardship of the particular case.

The award is affirmed.

McALISTER, C. J., and ROSS, J., concur.